UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.                                                              CRIMINAL ACTION NO. 3:09CR-85-S

KAREN CUNAGIN SYPHER                                                          DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Karen Cunagin Sypher, to dismiss the jury which has been empaneled for the trial of this case, and to consider for a second time her request for a change of venue to Owensboro or Bowling Green, Kentucky (DN 86).[1] The United States has failed to respond within the time period fixed by the court.[2] However, the court has taken the matter under consideration and is issuing this ruling in light of the fast-approaching trial of this matter.

The court denied the defendant's earlier motion for change of venue, finding no presumptive prejudice and noting that the question of actual prejudice, if any, would be raised at the time of jury selection in this division. *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007). Sypher now challenges the empaneling of the jury in the Louisville division, despite acknowledging that "[c]ounsel does not represent that any of the jurors selected to serve in this case are not suitable to

---

[1] While this motion is styled "Sypher's Motion to Strike the Jury Panel," in fact she seeks dismissal of the jury of twelve and four alternates which has been empaneled for trial. The jury panel called for *voir dire* has been discharged from service in this case, with the exception of these sixteen individuals.

[2] The court discussed with counsel, in chambers, the timing of the filing of Sypher's motion and a response by the United States and the need to promptly address various issues prior to the commencement of trial.

serve in this case. Counsel is satisfied that all seem qualified and dedicated to their oath to serve." Motion to Strike, p. 12.

The motion is based upon generalities and speculation rather than upon the actual outcome of the searching *voir dire* conducted in this case. For that reason, the motion to dismiss the jury and for change of venue will be denied.

At the outset, the court notes that a number of purported facts asserted by the defendant are either inaccurate or present an incomplete picture of the process utilized in seating the jury. Sypher contends that certain potential evidence previously addressed under seal was publicly revealed by the United States in its pretrial memorandum. In particular, Sypher points to the information concerning a civil action against Auto Glass and More, Inc. and Leonard LeGrande which was outlined in some detail in the United States' filing. The LeGrande litigation was not the subject of any motion practice in this case prior to the commencement of jury selection. The matters under seal related to other proposed evidence. Furthermore, the LeGrande litigation was first mentioned publicly by the defendant in her April 23, 2010 motion to continue the trial of this matter. (DN 59), albeit without particular detail. Finally, there was no indication that any of the jurors selected were aware of or had any opinion concerning the LeGrande matter.[3] Before being released from the courtroom at the end of the *voir dire* process, the jurors were instructed not to discuss the case with anyone or permit it to be discussed in their presence. They were also instructed not to read articles concerning the case in the newspaper, watch any such news broadcasts, or engage in any social media interaction concerning the matter.

---

[3] One potential juror referenced comments she had heard concerning Sypher's "pattern of behavior." She was questioned outside the hearing of the other panel members. Although she indicated that she felt that she would be able to disregard anything that she had heard outside the courtroom and decide the case only upon the evidence presented at trial, she was discharged for cause on motion of the defendant.

Sypher's memorandum outlines the process by which the jury was selected in this case. The parties drafted a juror questionnaire and submitted it to the court for review and approval. By agreement of the parties, a great deal of information was revealed to the jury panel and the public through that questionnaire. The information highlighted various moral and social issues implicated by the alleged conduct underlying the charges in this case. The potential jurors, thus enlightened, provided candid and informative answers to the many questions concerning their personal beliefs and experiences. Counsel were given the opportunity to review the answers and make further inquiry of the panel. The court dismissed those panel members who the parties sought to strike for cause. In addition to those who were released due to possible bias, jurors who had scheduled vacations, medical conditions, or other hardships which might interfere with their service on this jury were also released. The panel was thus reduced to fifty-two panel members from which thirty-six were drawn by lot from the wheel. Counsel were then able to exercise their full complement of peremptory challenges against the panel of thirty-six.

Sypher's challenge to the process of empaneling the jury is without merit. She acknowledges that "[i]n these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." Motion to Strike, p. 2. She also correctly notes that "[i]t is sufficient if [a] juror can lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court." Motion to Strike, p. 3. *See, United States v. Giacalone*, 588 F.2d 1158 (6th Cir.), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *United States v. Gay*, 522 F.2d 429 (6th Cir. 1975), ("If a juror can lay aside any preconceptions about the case and try it solely on the evidence

presented in court, it is not error to fail to dismiss such a juror for cause."), *citing, Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); *Irvin v. Dowd*, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Holt v. United States*, 218 U.S. 245, 248, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). In fact, the individuals selected to serve on this jury indicated that they had no preconceived opinions about the case. Most knew little about it.

The crux of Sypher's argument is that the "widespread, pervasive nature of the media reports coupled with the prominence and position of the alleged victim in this case make it impossible to seat a fair and impartial jury in the Louisville Division..." Motion to Strike, p. 3. This is the same argument which was raised and rejected in Sypher's earlier motion for change of venue. The court found that nothing close to presumptive prejudice had been shown. Presumptive prejudice from pretrial publicity may be found only "where an inflammatory, circus-like atmosphere pervades the courthouse and the surrounding community." *Ritchie v. Rogers*, 313 F.3d 948, 952-53 (6th Cir. 2002).

In finding in *Dobbert v. Florida,* 432 U.S. 282, 303, 97 S.Ct. 2290, 2303, 53 L.Ed.2d 344 (1977) that the defendant had failed to show that the trial setting was inherently prejudicial or that the jury selection process permitted an inference of actual prejudice, the United States Supreme Court stated:

> Petitioner's argument that the extensive coverage by the media denied him a fair trial rests almost entirely upon the quantum of publicity which the events received. He has directed us to no specific portions of the record, in particular the voir dire examination of the jurors, which would require a finding of constitutional unfairness as to the method of jury selection or as to the character of the jurors actually selected. But under Murphy, extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair. Petitioner in this case has simply shown that the community was made well aware of the charges against him and asks us on that basis to presume unfairness of constitutional magnitude at his trial. This we will not do in the absence of a "trial

> atmosphere...utterly corrupted by press coverage," *Murphy v. Florida, supra,* at 798 (95 S.Ct. 2031).

*Dobbert*, 432 U.S. at 303.

We find, similarly to *Dobbert*, that Sypher's argument for discharge of the jury and for change of venue focuses on the quantum of publicity that the case has generated. While there has been significant reporting in the media about the progress of the case, the court was able to find with relative ease a sizeable panel of qualified potential jurors. The panel was questioned during the process regarding recent publicity the case had received and any comments the jurors might have made or overheard amongst themselves while waiting in the jury lounge. Thus as up-to-the-minute an evaluation as possible was made concerning the potential impact of any pretrial publicity. We have been shown nothing in the record to indicate "unfairness of constitutional magnitude" attributable to publicity this case has received. While various sordid allegations concerning the conduct of defendant and alleged victim has garnered media attention, there has certainly not been a circus-like atmosphere pervading the courthouse or surrounding community. *Ritchie*, 313 F.3d at 952-53.

Sypher raises the specter of the "relative status in the community of the alleged victim [Rick Pitino, head coach of the University of Louisville men's basketball team] compared to that of the accused" (Motion to Strike, p. 6). Sypher states that "prospective jurors' opinions about Pitino [are] only relevant to the extent [they] prejudice[] Sypher, i.e. some indicated that because of his position and notoriety that he would have greater influence (credibility) than Sypher." Motion to Strike, p. 8. The court is aware of only one juror who indicated that he might view Pitino as a more credible witness. After extensive questioning, that juror was stricken for cause by agreement of counsel.

None of the individuals who were selected for the jury indicated that they had any preconceived opinion about Pitino's credibility.

Finally, Sypher urges that she has "grave concern.. that even where jurors claim no bias or opinion due to pretrial publicity, those claims of impartiality may not be believable in light of the pretrial publicity and prominence of the victim and the institution that he represents."  Motion to Strike, p. 12.  This argument is sheer speculation.  While urging this "grave concern," Sypher has also stated that she is "satisfied that all [the jurors selected to serve in this case] seem qualified and dedicated to their oath to serve."  Motion to Strike, p. 12.  Therefore, this argument is meritless and warrants no further discussion.

For the reasons set forth hereinabove and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Karen Cunagin Sypher, to strike the jury panel and for change of venue (DN 86) is **DENIED.**

**IT IS SO ORDERED.**